UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RODNEY WILLIAMSON,

               Plaintiff,

v.

TONY TRIERWEILER et al.,

               Defendants.

_____/

Case No. 1:18-cv-1238

Honorable Gordon J. Quist

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Macauley and Vroman.

## **Discussion**

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in Gratiot County, Michigan. The

events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia County, Michigan. Plaintiff sues the following MDOC employees at IBC: Warden Tony Trierweiler, Deputy Warden Unknown Macauley, Inspector D. Welton, Lieutenant Unknown Ferguson, Hearing Investigator Unknown Novak, and Resident Unit Manager (RUM) Mitch Vroman.

Plaintiff alleges that on December 14, 2015, he was found guilty of a Class I misconduct following a misconduct hearing. Defendant Novak was the hearing investigator for the misconduct charge. After the hearing, Plaintiff sent Novak a request for a copy of the disciplinary hearing packet. MDOC policy provides that a prisoner "may request and shall be provided" a copy of the hearing investigation packet following a Class I misconduct hearing. MDOC Policy Directive 03.03.105 ¶ GG (Apr. 9, 2012). This packet includes "the Hearing Investigation Report, any written witness statements, screening and assessment forms, and copies of photographs which have not been determined by the LARA hearing officer to be confidential[.]" *Id.* The prisoner must request the packet from the hearing investigator. *Id.*

Two weeks later, Plaintiff had not received the packet, so he sent another request to Novak by kite and filed a grievance about the issue. Plaintiff alleges that he needed the packet to appeal the outcome of the prison disciplinary hearing because the packet contained "exculpatory evidence that <u>may</u> have cleared Plaintiff of the charge." (Compl., ECF No. 1, PageID.4.) He had 30 days to appeal the misconduct conviction by requesting a rehearing. Plaintiff never received the packet, and he had to appeal the misconduct conviction without it. On March 28, 2016, his request for a rehearing was denied. Even by that time, he still had not received his hearing packet.

On January 8, 2016, Plaintiff saw Novak and asked about the hearing packet. Novak looked at Plaintiff and told him, "[Y]ou filed a [grievance] about that so what[']s the issue

now." (*Id.*, PageID.5.) Plaintiff responded that he had not received the packet within five business days. Novak allegedly stated, "[S]o now you're going to tell me when I have to provide your hearing packet. Well since you filed that [grievance], good luck with getting that hearing packet you stupid 'NI\*\*ER' because you won't be getting it from me." (*Id.*) According to Plaintiff, two other prisoners heard Novak's statement.

Plaintiff filed a grievance and wrote a letter to Deputy Warden Macauley regarding Novak's racially derogatory comment and failure to provide a hearing packet. On January 27, Inspector Welton interviewed Plaintiff regarding the grievance against Novak. Welton indicated that Novak denied making the statement, but Plaintiff identified two witnesses who could confirm Plaintiff's account. According to Plaintiff, Welton never interviewed these witnesses.

On February 4, Welton charged Plaintiff with Interference with the Administration of Rules—a Class II misconduct—for writing the grievance against Novak. (*See* Misconduct Report, ECF No. 1-1, PageID.38.) According to the misconduct report, Welton investigated Plaintiff's allegation of racial discrimination and found that Novak did not make the alleged statements. Welton reported that he sent the results of the investigation to Warden Trierweiler, who authorized the misconduct charge against Plaintiff. (*Id.*)

Lieutenant Ferguson held a hearing on the Class II misconduct charge and found Plaintiff guilty, giving him a sanction of 30 days of loss of privileges. Plaintiff contends that Ferguson relied solely on Welton's report that Novak refuted Plaintiff's allegation, even though MDOC policy provides that "[o]rdinarily, the statement of [a] staff member refuting the claim [in the false grievance] will not be sufficient" to support a charge that a prisoner intentionally filed a false grievance. (ECF No. 1-1, PageID.52.)

Plaintiff appealed the decision to Deputy Warden Macauley, who upheld Ferguson's guilty finding on the basis that "no due process or policy violations [were] discovered during review[.]" (Class II and Class III Misconduct Appeal, ECF No. 1-1, PageID.49.)

Plaintiff subsequently filed a grievance about the misconduct proceedings.

Because of Plaintiff's grievance regarding the misconduct proceedings, RUM Vroman referred Plaintiff for placement on modified access to the grievance process. (3/1/2016 Letter, ECF No. 1-1, PageID.53.)

Based on the foregoing allegations, Plaintiff claims that Defendants have deprived him of his right to procedural and substantive due process, discriminated against him on the basis of race, interfered with Plaintiff's right to petition for redress of grievances, retaliated against him for engaging in protected conduct by charging him with a false misconduct and punishing him, and denied him equal protection by treating him differently from other prisoners with respect to modified access to the grievance process. He also claims that Defendants Trierweiler, Macauley, Welton, and Ferguson conspired to violate his constitutional rights

As relief, Plaintiff seeks a declaratory judgment as well as compensatory and punitive damages.

II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. RUM Vroman

Plaintiff alleges that Defendant Vroman referred Plaintiff for placement on modified access to the grievance process. Plaintiff claims that this referral deprived him of his

right to petition for redress of grievances, denied him equal protection, and was a form of retaliation for Plaintiff's protected conduct, i.e., filing grievances.

### 1. Right to Petition for Redress

Vroman's referral did not interfere with Plaintiff's right under the First Amendment to petition the government for redress of grievances. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances.

Moreover, "[a] prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process

would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). Accordingly, Vroman's referral did not deprive Plaintiff of his constitutional right to petition for redress of grievances.

## 2. Retaliation

In addition, Plaintiff does not state a retaliation claim against Vroman. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, Plaintiff cannot satisfy the second element of a retaliation claim. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005). Consequently, Plaintiff does not state a retaliation claim against Defendant Vroman.

3. Equal Protection

Plaintiff contends that Defendant Vroman denied him equal protection under the Fourteenth Amendment because other prisoners "were allowed to use the prison [grievance] process unimpeded by the (IBC) administration[.]" (Compl., PageID.12.)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to unimpeded access to the grievance process, or to any grievance process at all. Courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at \*2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any

8

combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's equal protection claim fails because he does not identify any similarly situated prisoners who were treated differently from him. Plaintiff contends that other prisoners have been allowed to file grievances without interference, but that does not mean that he was treated differently from *similarly situated* prisoners. Indeed, every prisoner who has ever been placed on modified access could claim that other prisoners are allowed to file grievances without interference. But it does not necessarily follow that all prisoners placed on modified access are deprived of equal protection. There is nothing constitutionally improper about putting limits on access to the grievance process for certain prisoners under certain circumstances.

### 4. Prison Policy

The fact that Vroman did not follow prison policy, as Plaintiff contends, is not sufficient to state a claim under § 1983. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). A failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th

Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Accordingly, Plaintiff does not state a claim under § 1983 against Defendant Vroman.

## B.  Deputy Warden Macauley

Plaintiff alleges that Macauley was responsible for supervising other officers, and received notice from Plaintiff about Novak's racially derogatory comment and refusal to provide a hearing packet.  Apparently, Macauley did not respond to Plaintiff's kite about the issue.  In addition, Macauley reviewed and rejected Plaintiff's appeal from his misconduct conviction, finding no violation of policy or due process.  Plaintiff contends that Macauley did not properly apply prison policy, which provides that the statement of a staff member is ordinarily not sufficient to uphold a misconduct conviction for intentionally filing a false grievance.

### 1.  Respondeat Superior

Macauley is not liable for the conduct of other officials simply because he is their supervisor and he failed to correct their actions or because he reviewed their conduct in an appeal from Plaintiff's misconduct conviction.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.

10

*Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff contends that Macauley and Defendants Trierweiler, Welton, and Ferguson "punished" Plaintiff. However, the record reveals that Macauley simply reviewed Plaintiff's appeal from his misconduct conviction. Plaintiff alleges no facts from which to infer that Macauley is responsible for the actions taken against Plaintiff by other officers, which had already occurred when Macauley reviewed Plaintiff's appeal. Plaintiff contends that Macauley "initiated" the false misconduct report against Plaintiff, along with Trierweiler and Welton, but he provides no allegations to support or explain this vague assertion. (Compl., PageID.7.) In short, Macauley's actions did not, in and of themselves, infringe any of Plaintiff's constitutional rights.

### 2. Prison Policy

For the reasons stated with respect to Defendant Vroman, the fact that Macauley did not follow prison policy is not sufficient to state a claim under § 1983.

### 3. Due Process

Plaintiff asserts that Macauley was a biased decisionmaker and did not follow the proper rules. To the extent Plaintiff claims that Macauley deprived him of procedural due process, Plaintiff does not state a claim. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a

11

deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under MDOC Policy Directive 03.03.105 ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105 ¶ AAAA.) Therefore, Plaintiff would not have been denied good time or disciplinary credits as a result of his Class II misconduct conviction for interference with the administration of rules.

Moreover, the record attached to Plaintiff's complaint indicates that he received a sanction of 30 days' loss of privileges as a result of the misconduct conviction. (Class II and III Misconduct Hr'g Report, ECF No. 1-1, PageID.42.) Such a sanction is not an atypical and significant hardship. *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at \*3 (6th Cir. Nov. 9, 2017) (30 days of loss of privileges is not atypical and significant); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at \*3 (6th Cir. Jan. 24, 2017) (30 days of toplock and 30 days of loss of privileges is not atypical and significant). In short, there was no protected liberty or property interest at stake in Plaintiff's misconduct proceedings. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S.

564, 579 (1972)).  Therefore, Plaintiff fails to state a procedural due process claim arising from his Class II misconduct conviction and the appeal therefrom.

### 4. Conspiracy

Plaintiff alleges that Macauley was involved in a conspiracy with Defendants Trierweiler, Welton, and Ferguson to retaliate against Plaintiff and to deprive him of his right to file grievances, with the objective of "concealing" Novak's failure to provide a hearing packet. (*See* Compl., PageID.9.)  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative.  His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete acts that occurred over a period of time involving different individual officers.  Plaintiff has provided no plausible allegations establishing an agreement between them, let alone an agreement to retaliate against Plaintiff and/or conceal the actions of Defendant Novak.  He relies entirely on a

highly attenuated inference from the mere fact that he has been subjected to objectionable treatment by various prison officials at different times. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In short, Plaintiff fails to state a plausible claim of conspiracy. Thus, Plaintiff fails to state a claim against Defendant Macauley.

### C. Defendants Trierweiler, Welton, Ferguson & Novak

The Court finds that Plaintiff states at least one claim against Defendants Trierweiler, Welton, Ferguson, and Novak. Plaintiff's allegations are sufficient to state at least a retaliation claim against these Defendants. Inspector Welton charged Plaintiff with a misconduct for filing a grievance, Warden Trierweiler allegedly authorized the charge, and Lieutenant Ferguson found Plaintiff guilty and issued a sanction. In addition, Investigator Novak allegedly refused to provide Plaintiff with a hearing investigation packet because Plaintiff had filed a grievance.

Plaintiff's allegations against Defendants Trierweiler, Welton, Novak, and Ferguson satisfy all the elements necessary to state a retaliation claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Vroman and Macauley will be dismissed for failure to state a

14

claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will

allow the action to proceed against Defendants Trierweiler, Welton, Novak, and Ferguson.

An order consistent with this opinion will be entered.


Dated: December 4, 2018                                      /s/ Gordon J. Quist
                                                               GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE