UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY WILLIAMSON #186967,

    Plaintiff,                    Hon. Gordon J. Quist

v.                                  Case No. 1:18-cv-1238

TONY TRIERWEILER, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. (ECF No. 19). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that: (1) Defendants' motion be granted and Plaintiff's retaliation claims against Defendants Trierweiler and Ferguson be dismissed for failure to properly exhaust administrative remedies; (2) Plaintiff's equal protection and conspiracy claims against Defendants Trierweiler and Ferguson be dismissed for failure to state a claim; and (3) Defendants Trierweiler and Ferguson be dismissed from this action.

**BACKGROUND**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT). The events about which Plaintiff complains occurred at the Bellamy Creek Correctional Facility (IBC). Plaintiff has sued the following IBC employees: Warden Tony Trierweiler, Deputy Warden

-1-

Unknown Macauley, Inspector D. Welton, Lieutenant Unknown Ferguson, Hearing Investigator Unknown Novak, and Resident Unit Manager (RUM) Mitch Vroman. In its December 4, 2018, screening opinion, the Court described Plaintiff's allegations as follows:

> Plaintiff alleges that on December 14, 2015, he was found guilty of a Class I misconduct following a misconduct hearing. Defendant Novak was the hearing investigator for the misconduct charge. After the hearing, Plaintiff sent Novak a request for a copy of the disciplinary hearing packet. MDOC policy provides that a prisoner "may request and shall be provided" a copy of the hearing investigation packet following a Class I misconduct hearing. MDOC Policy Directive 03.03.105 ¶ GG (Apr. 9, 2012). This packet includes "the Hearing Investigation Report, any written witness statements, screening and assessment forms, and copies of photographs which have not been determined by the LARA hearing officer to be confidential[.]" *Id.* The prisoner must request the packet from the hearing investigator. *Id.*
>
> Two weeks later, Plaintiff had not received the packet, so he sent another request to Novak by kite and filed a grievance about the issue. Plaintiff alleges that he needed the packet to appeal the outcome of the prison disciplinary hearing because the packet contained "exculpatory evidence that <u>may</u> have cleared Plaintiff of the charge." (Compl., ECF No.1, PageID.4.) He had 30 days to appeal the misconduct conviction by requesting a rehearing. Plaintiff never received the packet, and he had to appeal the misconduct conviction without it. On March 28, 2016, his request for a rehearing was denied. Even by that time, he still had not received his hearing packet.
>
> On January 8, 2016, Plaintiff saw Novak and asked about the hearing packet. Novak looked at Plaintiff and told him, "[Y]ou filed a [grievance] about that so what[']s the issue now." (*Id.*, PageID.5.) Plaintiff responded that he had not received the packet within five business days. Novak allegedly stated, "[S]o now you're going to tell me when I have to provide your hearing packet. Well since you filed that [grievance], good luck with getting that hearing packet you stupid 'NI**ER' because you won't be getting it from me." (*Id.*) According to Plaintiff, two other prisoners heard Novak's statement.

-2-

Plaintiff filed a grievance and wrote a letter to Deputy Warden Macauley regarding Novak's racially derogatory comment and failure to provide a hearing packet. On January 27, Inspector Welton interviewed Plaintiff regarding the grievance against Novak. Welton indicated that Novak denied making the statement, but Plaintiff identified two witnesses who could confirm Plaintiff's account. According to Plaintiff, Welton never interviewed these witnesses.

On February 4, Welton charged Plaintiff with Interference with the Administration of Rules—a Class II misconduct—for writing the grievance against Novak. (*See* Misconduct Report, ECF No. 1-1, PageID.38). According to the misconduct report, Welton investigated Plaintiff's allegation of racial discrimination and found that Novak did not make the alleged statements. Welton reported that he sent the results of the investigation to Warden Trierweiler, who authorized the misconduct charge against Plaintiff. (*Id.*)

Lieutenant Ferguson held a hearing on the Class II misconduct charge and found Plaintiff guilty, giving him a sanction of 30 days of loss of privileges. Plaintiff contends that Ferguson relied solely on Welton's report that Novak refuted Plaintiff's allegation, even though MDOC policy provides that "[o]rdinarily, the statement of [a] staff member refuting the claim [in the false grievance] will not be sufficient" to support a charge that a prisoner intentionally filed a false grievance. (ECF No. 1-1, PageID.52.).

Plaintiff appealed the decision to Deputy Warden Macauley, who upheld Ferguson's guilty finding on the basis that "no due process or policy violations [were] discovered during review[.]" (Class II and Class III Misconduct Appeal, ECF No. 1-1, PageID.49.) Plaintiff subsequently filed a grievance about the misconduct proceedings. Because of Plaintiff's grievance regarding the misconduct proceedings, RUM Vroman referred Plaintiff for placement on modified access to the grievance process. (3/1/2016 Letter, ECF No. 1-1, PageID.53.)

Based on the foregoing allegations, Plaintiff claims that Defendants have deprived him of his right to procedural and substantive due process, discriminated against him on the basis of race, interfered with Plaintiff's right to petition for redress of grievances, retaliated against him for engaging in protected conduct by charging him with a false misconduct and punishing him, and denied him equal protection by treating him differently from other prisoners with respect to modified access to the grievance process. He also claims that Defendants Trierweiler, Macauley, Welton,

and Ferguson conspired to violate his constitutional rights. As relief, Plaintiff seeks a declaratory judgment as well as compensatory and punitive damages.

(ECF No. 5).

The Court then analyzed Plaintiff's complaint and concluded that Plaintiff's allegations against Defendants Vroman and Macauley must be "dismissed for failure to state a claim," but as to Defendants Trierweiler, Welton, Novak, and Ferguson, the Court permitted "the action to proceed." (ECF No. 5 at PageID.79-80). Defendants Trierweiler and Ferguson now move the Court for summary judgment as to Plaintiff's retaliation claims on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Plaintiff has responded to Defendants' motion. (ECF No. 27-28).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I. Exhaustion

As noted above, Plaintiff filed a grievance alleging that Defendant Novak referred to him using a racial slur. Following an investigation into Plaintiff's allegations, Defendant Welton charged Plaintiff with Interference with the Administration of Rules for filing an unfounded grievance against Novak. Plaintiff alleges that Defendant Trierweiler approved charging Plaintiff with this misconduct and Defendant Ferguson found him guilty of this misconduct. Plaintiff alleges that Defendants' conduct

constituted unlawful retaliation. Defendants Trierweiler and Ferguson argue that Plaintiff has failed to properly exhaust these claims.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division

in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P (July 9, 2007). If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Ibid.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Ibid.*

In support of their motion for summary judgment, Defendants have identified two grievances Plaintiff filed: (1) IBC-16-01-0137-17e, and (2) IBC 16-02-0438-27a. (ECF No. 20-2 at PageID.131-40). In his response to the present motion, Plaintiff has not identified or referenced any additional grievances which he asserts are relevant to the resolution of Defendants' motion.

-8-

Grievance IBC-16-01-0137-17e concerns Plaintiff's allegations that Defendant Novak referred to him using a racial slur. (ECF No. 20-2 at PageID.131-35). The grievance does not reference Defendants Trierweiler or Ferguson and likewise makes no mention of Plaintiff's allegations of retaliation against these defendants. Accordingly, this grievance fails to properly exhaust Plaintiff's retaliation claims against Defendants Trierweiler or Ferguson.

In grievance IBC 16-02-0438-27a, Plaintiff alleged that Defendant Ferguson found him guilty of Interference with the Administration of Rules as retaliation for alleging that Defendant Novak used a racial slur. (ECF No. 20-2 at PageID.136-40). This grievance was rejected at all three steps on the ground that decisions made by a hearing officer or related to the hearing process cannot be challenged through the prison grievance process. (*Id.*). Pursuant to MDOC Policy, matters regarding "decisions made in hearings conducted by hearing officers" are non-grievable and, therefore, cannot be exhausted through the prison grievance process. Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ (F)(2) (effective July 9, 2007).

The Sixth Circuit has confirmed that claims concerning decisions made in the misconduct hearing process must be exhausted through that process, not the prison grievance procedure. *See Siggers v. Campbell*, 652 F.3d 681, 694 (2011); *see also*, *Smith v. Goulet*, 2018 WL 3688468 at *2 (W.D. Mich., Aug. 3, 2018) ("the ordinary grievance procedure does not apply to disputes arising out of misconduct hearings, the prisoner must instead raise the issue in the misconduct hearing"); *Miller v. Klee*, 2018 WL

1354473 at *5 (E.D. Mich., Feb. 23, 2018) ("a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies").

Plaintiff has submitted a copy of the appeal he filed following Defendant Ferguson's decision finding him guilty of Interference with the Administration of Rules. (ECF No. 28-1 at PageID.244). In his appeal, Plaintiff makes no mention of Defendants Trierweiler and Ferguson or his allegations that they engaged in unlawful retaliation. (*Id.*). While Plaintiff has submitted certain evidence regarding the alleged merits of his various claims, Plaintiff has failed to submit any evidence suggesting that he properly exhausted the claims in question or otherwise undermining the evidence which supports Defendants' position. The Court, therefore, finds that Defendants Trierweiler and Ferguson have satisfied their burden to demonstrate that Plaintiff has failed to properly exhaust his claims of retaliation against them. Accordingly, the undersigned recommends that as to Plaintiff's retaliation claims, Defendants Trierweiler and Ferguson are both entitled to summary judgment.

## II. Equal Protection and Conspiracy Claims

In Count IV of his complaint, Plaintiff also asserts equal protection and conspiracy claims against Defendants Trierweiler and Ferguson. (ECF No. 1 at PageID.12-13). These particular claims are also asserted against Defendants Vroman and Macauley. (*Id.*). In its December 4, 2018, screening opinion, the Court found that, as to Defendants

Vroman and Macauley, Plaintiff's equal protection and conspiracy allegations failed to state a claim on which relief may be granted. (ECF No. 5 at PageID.73-78).

The Court's analysis in this regard is equally applicable to Plaintiff's equal protection and conspiracy claims against Defendants Trierweiler and Ferguson, as such are based the exact same allegations. Accordingly, and in light of Plaintiff's pauper status, the undersigned recommends that Plaintiff's equal protection and conspiracy claims against Defendants Trierweiler and Ferguson be dismissed for failure to state a claim for the reasons previously articulated by the Court. *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted").

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that: (1) Defendants' Motion for Partial Summary Judgment (ECF No. 19) be **GRANTED** and Plaintiff's retaliation claims against Defendants Trierweiler and Ferguson be **DISMISSED** for failure to properly exhaust administrative remedies; (2) Plaintiff's equal protection and conspiracy claims against Defendants Trierweiler and Ferguson be **DISMISSED** for failure to state a claim; and (3) Defendants Trierweiler and Ferguson be **DISMISSED** from this action.

Date: November 26, 2019  /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

**NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).